LONG GROVE MANOR, Petitioner-Appellant, v. THE PROPERTY TAX
APPEAL BOARD et al., Respondents-Appellees.

Second District    No. 2—97—1078

Opinion filed December 18, 1998.

Allen A. Lefkovitz, of Allen A. Lefkovitz & Associates, P.C., and Lawrence
M. Templer, of Jolivette & Templer, P.C., both of Chicago, for petitioner.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solici-

tor General, and Jill A. Dougherty and Michael A. Rakov, Assistant Attorneys General, of counsel), for respondent Illinois Property Tax Appeal Board.

Michael J. Waller, State's Attorney, of Waukegan (Jacob Marc Steinfink, Assistant State's Attorney, of counsel), for respondent Lake County Board of Review.

JUSTICE HUTCHINSON delivered the opinion of the court:

Petitioner, Long Grove Manor, appeals the order of the Property Tax Appeal Board (the Board) assessing petitioner's property at $558,646 for 1995. Petitioner contends that the Board erred by assessing an improvement on the property although the improvement was not initially occupied until 1996. We affirm.

The improvement in question is a nursing home that petitioner had constructed on a parcel it owns in Long Grove. Petitioner obtained excavation and building permits in 1994 and began construction. By January 1995, the building was under roof. The Village of Long Grove issued petitioner a temporary occupancy permit on October 17, 1995, for the sole purpose of allowing petitioner to receive a permit from the state health department.

A contractor's affidavit dated October 23, 1995, showed that the construction of the building was complete. The Illinois Department of Public Health issued an operating permit on December 26, 1995. On January 5, 1996, Long Grove issued another temporary occupancy permit and subsequently issued a final permit.

Gary Raupp, the Vernon Township assessor, testified that in 1994 he assessed the parcel as vacant land. In 1995, he determined that the structure was substantially completed because it was under roof as of January 1, 1995. He, therefore, valued it for assessment purposes. However, because the building was not occupied, he imposed only a "token assessment" of 25%, which was his policy in all such cases. This resulted in an assessment of $358,883 for the improvement.

The Board of Review reduced the assessment to $347,284. Petitioner then appealed to the Board, arguing that the assessment should be $0. The Board disagreed and upheld the assessment. Petitioner timely appealed directly to this court. See 35 ILCS 200/16—195 (West 1996).

■ Petitioner contends that the Board erred in determining that the building was substantially completed, and thus assessable, in January 1995. Petitioner relies on section 9—180 of the Property Tax Code (the Code) (35 ILCS 200/9—180 (West 1994)), which provides as follows:

"The owner of property on January 1 also shall be liable, on a

proportionate basis, for the increased taxes occasioned by the construction of new or added buildings, structures or other improvements on the property from the date when the improvement was substantially completed and initially occupied or initially used, to December 31 of that year." 35 ILCS 200/9—180 (West 1994).

Petitioner argues that under section 9—180 an improvement must be both substantially completed and initially occupied before it can be assessed. According to petitioner, although the building was substantially completed by January 1, 1995, it was not initially occupied until 1996 (or at the earliest, December 26, 1995, when the health department issued a permit). Petitioner thus contends that the improvement should not have been assessed for any amount in 1995.

The Board and the Lake County Board of Review (Lake County) respond that section 9—180 is not the only section of the Code that applies to this case. The Board and Lake County contend that section 9—180 controls when a building can be fully assessed but does not prevent a partial assessment before that time.

■ Section 9—160 of the Code provides:

"On or before June 1 in each year other than the general assessment year *** the assessor shall list and assess all property which becomes taxable and which is not upon the general assessment, and also make and return a list of all new or added buildings, structures or other improvements of any kind, the value of which had not been previously added to or included in the valuation of the property on which such improvements have been made, specifying the property on which each of the improvements has been made, the kind of improvement and the value which, in his or her opinion, has been added to the property by the improvements. The assessment shall also include or exclude, on a proportionate basis in accordance with the provisions of Section 9—180, all new or added buildings, structures or other improvements, the value of which was not included in the valuation of the property for that year, and all improvements which were destroyed or removed." 35 ILCS 200/9—160 (West 1994).

■ We agree with the Board and Lake County that section 9—160 authorizes the procedure the assessor used here. When construing a statute, the primary concern is to give effect to the legislature's intention. *Zekman v. Direct American Marketers, Inc.*, 182 Ill. 2d 359, 368 (1998). Undefined terms should be given their ordinary and popularly understood meanings. *Texaco-Cities Service Pipeline Co. v. McGaw*, 182 Ill. 2d 262, 270 (1998).

■ Here, section 9—160 requires the assessor to record any new improvements and to determine the value they have added to the

property. By its terms, section 9—180, applies only after a building has been substantially completed and initially occupied. Reading these two sections together, section 9—160 clearly requires the assessor to value any substantially completed improvements to the extent that they add value to the property. Section 9—180 then defines the time when the improvement can be fully assessed. This occurs when the building is both substantially completed and initially occupied. We note parenthetically that the legislature has amended section 9—180 to provide that an improvement may be fully assessed when it is *either* substantially completed *or* initially occupied. 35 ILCS 200/9—180 (West 1996). However, the parties do not contend that the amended section 9—180 applies to this case.

Here, Raupp testified that he determined the building to be substantially completed because it was under roof as of January 1, 1995. He then valued the building based on the valuation of other nursing homes in the area. However, because it was unoccupied, he imposed a "token assessment" of 25% of the assessed value. He testified that, if sold, the property would be worth more because of the partially completed building. This procedure complied with section 9—160. The building was assessed based on the value it added to the property but was not fully assessed because it was not then both substantially completed and initially occupied. Accordingly, the Board did not err in upholding the assessment.

In *Michigan-Grand Building Corp. v. Barrett*, 350 Ill. 291 (1932), our supreme court rejected the contention that a building could not be taxed because it was not under roof by the start of the tax year. The court stated that, if during the year improvements were placed on a parcel, it became the assessor's duty "to determine the amount, in its opinion, of any change in the value by reason of the improvements thereon and add to the assessment accordingly." *Michigan-Grand Building Corp.*, 350 Ill. at 304; see also *People ex rel. McDonough v. Marshall Field & Co.*, 355 Ill. 633, 640 (1934).

Because of our disposition of this contention, we need not determine whether the Board correctly determined that the building was substantially complete or properly applied a 25% multiplier to account for the fact that it was not occupied.

The order of the Property Tax Appeal Board is affirmed.

Affirmed.

McLAREN and THOMAS, JJ., concur.